1 | Brian A. Cabianca (AZ Bar No. 016410)
    brian.cabianca@squirepb.com
2 | Gregory Schneider (AZ Bar No. 034309)
    gregory.schneider@squirepb.com
3 | SQUIRE PATTON BOGGS (US) LLP
    One East Washington Street, Suite 2700
4 | Phoenix, Arizona 85004
5 | Tel: (602) 528-4000
    Fax: (602) 253-8129

Aneca E. Lasley (*Admitted Pro Hac Vice*)
aneca.lasley@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Tel: (614) 365-2700
Fax: (614) 365-2499

Michael H. Carpenter (*Admitted Pro Hac Vice*)
carpenter@carpenterlipps.com
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Border Chicken AZ LLC, | Case No. 2:20-cv-00785-JJT |
| Plaintiff, | **MOTION OF DEFENDANT ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| v. | |
| Nationwide Mutual Insurance Company, *et al.* | **(Oral Argument Requested)** |
| Defendants. | (Assigned to Honorable Judge John J. Tuchi) |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Allied Property and Casualty Insurance Company ("Defendant") moves to dismiss plaintiff's Amended Complaint for failure to state a claim. Defendant also seeks dismissal of certain claims pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Grounds for this Motion are provided in the accompanying Memorandum In Support.

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION.

Plaintiff, a fast-food franchise operator with 14 franchises in Arizona and one in New Mexico, alleges it has a policy that provides coverage for the business losses it suffered stemming from the SARS-CoV-2 coronavirus and/or its resulting disease, COVID-19. Plaintiff's original Complaint failed to inform the Court that the subject policy contains a virus exclusion, which bars plaintiff's claims. Even more remarkably, plaintiff *still* does not mention the virus exclusion in its Amended Complaint, even though Defendant raised the virus exclusion in its motion to dismiss the original Complaint (and in the parties' meet and confer prior to the filing of that motion).

Plaintiff cannot avoid dismissal, however, by pretending that the virus exclusion does not exist. Specifically, the virus exclusion expressly excludes coverage in this case:

> We will not pay for loss or damage caused directly or indirectly by any of the following . . . regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . . virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

[Premier Businessowners Policy ("Policy") at § B(1)(i), attached hereto in full as **Exhibit A** and with relevant excerpts as **Exhibit B**.[1]]

It is black-letter law that this Court should apply the Policy – including the clear and unambiguous virus exclusion – as written. This Court and the Ninth Circuit repeatedly have enforced clear and unambiguous policy exclusions, including similar mold/bacteria exclusions. *See, e.g.*, *Cooper v. Am. Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 963 (D. Ariz. 2002) ("The policy says loss caused by mold is excluded. Enforcing the policy as written, this Court concludes loss caused by mold is excluded"). This Court should do the same here. While the coronavirus is a health concern, this is not grounds to rewrite plaintiff's insurance contract. As the Arizona Supreme Court has cautioned, a court

---

[1] Because the Amended Complaint necessarily relies on the insurance policy, it is central to plaintiff's claims and this Court may consider it on a motion to dismiss. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

- 2 -

"'should not attempt to revise the policy to increase the risk or extend liability just to accomplish a so-called good purpose." *Sec. Ins. Co. of Hartford v. Andersen*, 763 P.2d 246, 248 (Ariz. 1988). In short, the virus exclusion bars coverage in this case.

Plaintiff also alleges that its Policy provides coverage under a "Civil Authority" provision, including Civil Authority coverage for business income. The virus exclusion, however, plainly applies to and bars coverage under the policy's "Civil Authority" provision as well. Furthermore, "Civil Authority" coverage only applies where plaintiff has been prohibited from accessing its premises ***and*** where there has been a ***complete*** cessation of operations. [*See* Ex. A, Policy §§ A(5)(g) & (j);] *Alon v. State Farm Fire & Cas. Co.*, 2013 WL 12250466 at *6 (D. Ariz. Feb. 25, 2013) ("Courts have consistently construed the 'necessary suspension of your operations' language to mean a ***complete*** cessation of all business activities.") (compiling cases) (emphasis added). Neither occurred here. Plaintiff concedes that its restaurants have been permitted to continue providing customers with pick up, delivery and drive-thru services. [*See* Am. Compl. ¶ 25.]

Accordingly, plaintiff has no claim for coverage under the terms of the Policy, and plaintiff's Amended Complaint should be dismissed with prejudice as a matter of law and Defendant awarded its fees and costs pursuant to A.R.S. § 12-341.01.[2]

## II.   BACKGROUND.

### A.   Amended Complaint Allegations.

Plaintiff's Amended Complaint contains no material changes (other than the removal of Nationwide Mutual Insurance Company as a named defendant). Plaintiff is in the fast food business and has "15 franchises of Church's Fried Chicken and one franchise of Little Caesars Pizza, 14 in Arizona and 1 in New Mexico." [*See* Am. Compl. ¶ 7.] Plaintiff alleges Defendants issued to it a Premier Businessowners Policy with Policy Number ACP 30-1-8831950. [*See* Am. Compl. ¶ 1.]

Plaintiff alleges that the Policy provides "Additional Coverage" under a "Civil

---

[2] Additional grounds to exclude coverage under the Policy exist, including that the coronavirus has not caused direct physical damage to the covered property. In filing this motion to dismiss, Defendants are not waiving the right to raise such additional grounds at a later time, if necessary.

- 3 -

Authority" provision of the Policy. [*See* Am. Compl. ¶¶ 15-19.] Plaintiff further alleges that it has sustained a "Covered Loss due to civil authority orders[,]" specifically, due to Executive Orders 2020-09 and 2020-18 issued on March 19 and March 30, 2020, respectively, by the Governor of the State of Arizona. [*See* Am. Compl. ¶¶ 22-27; Mar. 19, 2020 Order and Mar. 30, 2020 Order ("Governor's Orders"), attached hereto as **Exhibit C**.³]

As plaintiff concedes, however, the Governor's Orders expressly permit restaurants to "continue serving the public through pick up, delivery and drive-thru operations." [Am. Compl. ¶ 25; *see also* Am. Compl. ¶ 27 ("This Executive Order shall not be construed to prohibit . . . operating . . . restaurants and food services providing delivery or take-away services . . . .").]

Plaintiff does not allege that any civil authority has prohibited access to its premises or that it has had to suspend its operations. Nonetheless, plaintiff alleges that it has suffered "Covered Losses" as a result of the Governor's Orders. [*See* Am. Compl. ¶ 28.] Plaintiff alleges that "Defendants have . . . wrongfully repudiated coverage under the Policy for such Covered Losses[.]" [*See* Am. Compl. ¶ 29.] Plaintiff does not allege it submitted a claim to Defendant, and suggests that relief is appropriate on a class-wide basis "irrespective of whether members of the Class have filed a claim." [*See* Am. Compl. ¶ 199.]

Plaintiff asserts claims for breach of contract and declaratory judgment. [*See* Am. Compl. Counts I & II.] Plaintiff also seeks certification of a national class, and Arizona and New Mexico subclasses, of insureds with in-force policies issued by Defendant. [*See* Am. Compl. ¶ 171.]

### B. Relevant Terms Of The Subject Policy.

The Policy provides coverage for "direct physical loss of or damage to Covered Property at the described premises . . . caused by or resulting from any Covered Cause of Loss." [*See* Ex. A, Policy § (A); Ex. B., Policy at p.2.] Additional "Civil Authority"

---

³ The Court may consider the complete text of the Governor's Orders in considering this motion to dismiss because they are a matter of public record. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider . . . matters of public record.").

coverage is provided "[w]hen a Covered Cause of Loss causes damage to property other than the property at the described premises . . . caused by action of civil authority that prohibits access to the described premises[.]" [Ex. A, Policy § (A)(5)(j); Ex. B, Policy at p.8.] In short, the Policy only provides coverage for a "Covered Cause of Loss."

The definition of a "Covered Cause of Loss," however, clearly and unambiguously excludes from coverage any loss or damage identified in the Exclusions section of the Policy:

> 3.   COVERED CAUSES OF LOSS
>
> This Coverage Form insures against direct physical loss unless the loss is:
>
> a.   Excluded in Section B. EXCLUSIONS;

[Ex. A, Policy § (A)(3)(a); Ex. B, Policy at p.3.] The Exclusions section of the Policy, in turn, clearly and unambiguously excludes losses arising from or relating to a virus:

> **B. EXCLUSIONS**
>
> 1.   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> * * *
>
> **i.   Virus Or Bacteria**
>
> (1)   Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

[Ex. A, Policy § (B)(1)(i)(1); Ex. B, Policy at pp. 21, 23.]

Even if a Covered Cause of Loss exists, and no exclusion applies, the Policy still only provides coverage for loss of business income where there has been a "suspension" of operations:

> 5.   ADDITIONAL COVERAGES
>
> * * * *
>
> g.   **Business Income**

- 5 -

      **(1)    Business Income with Ordinary Payroll Limitation**

          (a)    We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises.

[Ex. A, Policy § (A)(5)(g); Ex. B, Policy at p. 6-7.]

## III.   APPLICABLE LEGAL STANDARDS.

### A.   Motion To Dismiss.

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. In other words, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

This Court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted); *see also Raygarr LLC v. Emp'rs Mut. Cas. Co.*, 2018 WL 4207998 at *2 (D. Ariz. Sept. 4, 2018) (considering insurance policy referenced throughout complaint). Here, plaintiff's complaint not only refers to the Policy attached to this Motion as Exhibit A, but also it is the basis for plaintiff's claims. Accordingly, the Court may consider the Policy on defendants' Rule 12(b)(6) motion to dismiss.

### B.   Construction Of Insurance Policy Terms.

Because this case arises out of this Court's diversity jurisdiction, Arizona law

- 6 -

1  governs the interpretation of the insurance contract at issue.  *See Colony Ins. Co. v. Events*
2  *Plus, Inc.*, 585 F. Supp. 2d 1148, 1151 (D. Ariz. 2008) (applying Arizona law to insurance
3  contract); *AMERCO v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2014 WL 2094198 at *3 (D.
4  Ariz. May 20, 2014) (same).

5  Under Arizona law, "[c]ourts construe an insurance contract according to its plain
6  and ordinary meaning." *AMERCO* at *3.  "Unambiguous provisions must be given effect
7  as written" and "[w]hen policy language is unambiguous, the court does not create
8  ambiguity to find coverage." *Id.*  Furthermore, "[a]n insurer may limit its liability by
9  imposing conditions and restrictions as long as those restrictions are not contrary to public
10 policy." *Cooper v. Am. Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 963 (D. Ariz. 2002)
11 (enforcing mold exclusion).

12 As the Arizona Supreme Court has cautioned, "[w]here the policy language is clear,
13 a court may not take 'the easy way out' by inventing ambiguity, and then resolving it to
14 find coverage where none exists under the policy." *Sec. Ins. Co. of Hartford v. Andersen*,
15 763 P.2d 246, 248 (Ariz. 1988).  A court "'should not attempt to revise the policy to
16 increase the risk or extend liability just to accomplish a so-called good purpose.'" *Id.*
17 (quoting *Stearns-Roger Corp. v. Hartford Accident & Indem. Co.*, 571 P.2d 659,
18 662 (1977).

### IV.   THE VIRUS EXCLUSION IN THE POLICY BARS PLAINTIFF'S CLAIMS AS A MATTER OF LAW.

21 This Court must apply the language of the Policy as written.  Here, the applicable
22 language is clear and unambiguous:  the Policy expressly excludes from coverage any loss
23 or damage caused directly or indirectly by a virus, and regardless of any other cause or
24 event contributing to any alleged loss.  Specifically, the Policy provides as follows:

> **B. EXCLUSIONS**
>
> 1.   We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

* * *

      **i.**     **Virus Or Bacteria**

          (1)    Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

[Ex. B, Policy at p. 21, 23.]  There is no ambiguity whatsoever in this language.

     Furthermore, plaintiff's claims fall squarely within the plain language of the Policy's virus exclusion.  Plaintiff alleges that the coronavirus is a global pandemic, that a national emergency exists as a result of the coronavirus pandemic, and that governmental orders have been issued to "slow the spread of COVID-19."  [Am. Compl. ¶ 23.].  In an apparent effort to disguise the coronavirus as the cause of its losses, however, plaintiff has altered certain of its prior references to the coronavirus, as demonstrated by the redline of plaintiff's Amended Complaint:

> 1.    Plaintiff . . . and others similarly situated have suffered business losses . . . in connection ~~the current coronavirus pandemic ("the Pandemic") and~~ with the civil actions taken by governmental authorities in efforts to ~~quell~~address the current coronavirus pandemic ("the Pandemic~~.~~").
>
> * * * *
>
> 28.    As a consequence of ~~the Pandemic (including specifically damage to property caused by the coronavirus),~~ Arizona Order 2020-09, and Executive Order 2020-18, Plaintiff and the Additional Insureds have suffered Covered Losses under the Policy.

[*See* Am. Compl. Redline ¶¶ 1, 28 (Doc. 17-1).]  Plaintiff's wordsmithing does not change the result:  the alleged losses it incurred still arose from the coronavirus.  Indeed, plaintiff still acknowledges that the subject governmental orders arose directly from the efforts to "address the current coronavirus pandemic," and the Orders themselves make this abundantly clear.  [*See* Am. Compl. ¶ 1; *see also* Ex. C, Goverenor's Orders].  Furthermore, the virus exclusion expressly states that it bars coverage for any "loss or damage caused directly or indirectly" by a virus, and "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  [Ex. B, Policy at p. 21, 23.]

In sum, Plaintiff's claims are based on alleged losses resulting (directly or indirectly) from the coronavirus – a cause of loss or damage expressly excluded from coverage under the terms of the Policy. This Court must apply the clear and unambiguous Policy language as written. Indeed, this Court and the Ninth Circuit previously have enforced similar mold/bacteria exclusions. *See, e.g.*, *Cooper*, 184 F. Supp. 2d at 963 ("The policy says loss caused by mold is excluded. Enforcing the policy as written, this Court concludes loss caused by mold is excluded"); *Canal Indem. Co. v. Adair Homes Inc.*, 445 F. App'x 938 (9th Cir. 2011) (mold and other exclusions clearly and unambiguously barred coverage); *see also Polo Towers Master Owners Ass'n, Inc. v. Factory Mut. Ins. Co.*, 185 F. App'x 636 (9th Cir. 2006) (contamination exclusion unambiguously barred coverage for legionella bacteria in water). Accordingly, this Court should apply the virus exclusion as written and should dismiss plaintiff's claims as a matter of law.[4]

## V. THE CIVIL AUTHORITY PROVISION OF THE POLICY DOES NOT PROVIDE COVERAGE TO PLAINTIFF.

Beyond failing to attach the Policy as an exhibit, Plaintiff ignores the Policy's virus exclusion, making no mention of it anywhere in either its original Complaint, or remarkably, its Amended Complaint. Instead, plaintiff cites to the Policy's Civil Authority coverage provision. Yet, that provision does not save plaintiff's claims.

### A. The Virus Exclusion Precludes Civil Authority Coverage.

No Civil Authority coverage exists here because coverage is excluded by the virus exclusion. Specifically, Civil Authority coverage only exists where there is a "Covered Cause of Loss." [*See* Ex. A, Policy at § (A)(5)(j); Ex. B, Policy at p.8.] A "Covered Cause of Loss," in turn, expressly *excludes* any loss or damage identified in the Exclusions section of the Policy:

> 3.  COVERED CAUSES OF LOSS
>
> This Coverage Form insures against direct physical loss unless

---

[4] In fact. this Court repeatedly has enforced unambiguous policy exclusions in a variety of contexts. *See AMERCO v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2014 WL 2094198 (D. Ariz. May 20, 2014); *Colony Ins. Co. v. Events Plus, Inc.,* 585 F. Supp. 2d 1148 (D. Ariz. 2008); *Holy Trinity Greek Orthodox Church v. Church Mut. Ins. Co.*, 2006 WL 18488 (D. Ariz. 2006).

- 9 -

the loss is:

      a.      Excluded in Section B. EXCLUSIONS;

[Ex. A, Policy at § (A)(3); Ex. B, Policy at p.3.] Because the virus exclusion expressly *excludes* coverage for loss or damage arising (directly or indirectly) from the coronavirus, there is no "Covered Cause of Loss," and plaintiff has no coverage under the Civil Authority provision – or any other provision – of the Policy as a matter of law.

### B. No Order Has Prohibited Access To Plaintiff's Premises.

Even absent the virus exclusion, no Civil Authority coverage exists because plaintiff has access to its premises. Civil Authority coverage only arises when an "action of civil authority . . . prohibits access to the described premises[.]" [Ex. A, Policy § (A)(5)(j); Ex. B, Policy at p.8.] Plaintiff, however, does not (and cannot) allege that access to any of its locations has been prohibited by any civil authority. To the contrary, plaintiff expressly alleges that the Governor's Orders permit restaurants to "continue serving the public through pick up, delivery and drive-thru operations." [Am. Compl. ¶ 25; *see also* Am. Compl. ¶ 27 ("This Executive Order shall not be construed to prohibit . . . operating . . . restaurants and food services providing delivery or take-away services").] By its own allegations, plaintiff, as an operator of fast food restaurants, has not been prohibited from accessing its premises.[5]

In sum, the virus exclusion plainly excludes coverage under the Civil Authority provision of the Policy, and plaintiff also has failed to allege that access to its premises has been prohibited. Accordingly, plaintiff's claims should be dismissed as a matter of law.

---

[5] The websites for Plaintiff's franchises make clear they have, in fact, been open for business. For example, the website for the Church's Chicken at 1840 W. Peoria Ave. – a location identified in the Policy – indicates that it has been open for "Drive Thru, Takeout and Delivery." [*See* Church's Chicken 1840 W. Peoria Ave.: Fried Chicken in Phoenix, AZ, CHURCHS.COM (last visited Apr. 24, 2020), attached hereto as **Exhibit D**; Ex. B at Property Declarations (identifying premises address as 1840 W. Peoria Ave).] Similarly, the website for the Little Caesars at 3730 W. Happy Valley Rd. – another location identified in the Policy – also indicates that it remains open for delivery. [*See* 3730 West Happy Valley Rd, LITTLECAESARS.COM (last visited May 8, 2020), attached hereto as **Exhibit E**; Ex. B at Property Declarations (identifying premises address as 3730 W. Happy Valley Rd.).] This Court may take judicial notice of these website pages. *See, e.g.*, *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. 2012) (taking judicial notice of NFL website).

## VI. PLAINTIFF HAS NOT SUFFERED A SUSPENSION OF OPERATIONS.

The Policy's provision of Civil Authority coverage for business income also cannot save plaintiff's claim for business losses. [*See generally* Ex. A, Policy §§ (A)(5)(j) & (A)(5)(g).]  The Policy only provides coverage for business income loss that arises from "a necessary suspension of your 'operations.'" [*See id.* at § (A)(5)(g); Ex. B, Policy at p. 6-7]. As this Court has noted in concluding coverage did not apply under a similar policy provision, "[c]ourts have consistently construed the 'necessary suspension of your operations' language to mean a ***complete*** cessation of all business activities." *Alon v. State Farm Fire & Cas. Co.*, 2013 WL 12250466 at *6 (D. Ariz. Feb. 25, 2013) (compiling cases) (emphasis added).

Here, plaintiff does *not* (and cannot) allege a complete cessation of all business activities.  To the contrary, none of the Governor's Orders that plaintiff relies on prohibited plaintiff from accessing its locations. [*See* Am. Compl. ¶¶ 25 & 27].  Plaintiff not only remains free to continue serving food to the public, but also has done so. [*See supra* note 4.]  These undisputed facts show there simply has been no complete cessation of operations.

In an effort to avoid this conclusion, plaintiff incorrectly cites to a Policy definition of "suspension" that has no application here.  Specifically, plaintiff alleges that the Policy defines "suspension" as a "(1) [] partial slowdown [] of business activities; and (2) "That a part or all of the described premises is rendered untenantable, . . ." [*See* Am. Compl. ¶ 21]. Plaintiff, however, fails to inform the Court that this definition expressly applies only to a single Policy exclusion that is *not* at issue here:

> 5.   Business Income And **Extra Expense Exclusions**
>
> a.   We will not pay for:
>
> (1)   Any **"extra expense"**, or **increase** of "business income" loss, caused by or resulting from:
>
> \* \* \* \*
>
> (b)   Suspension, lapse or cancellation of any license, lease or contract.  But if the suspension, lapse or cancellation is directly caused by the suspension of

> "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.
>
> * * * *
>
> b.  **With respect to this exclusion, suspension means:**
>
> (1)  The partial slowdown or complete cessation of your business activities; **and**
>
> (2)  That a part or all of the described premises is **rendered untenantable**, if coverage for Business Income applies.

[*See* Ex. A, Policy § (B)(5)(a), (b); Ex. B, Policy at p. 26 (emphasis added)].

By its own language, the definition of "suspension" cited by plaintiff applies *only* "with respect to this exclusion," *i.e.*, the Business Income And Extra Expense Exclusion governing the suspension, lapse or cancellation of a license, lease or contract. That exclusion is not at issue here. Furthermore, even if this definition of suspension somehow applied here – and it does not – it requires not only a slowdown of activities, but also that "a part or all of the described premises is rendered untenantable." *Id.* Plaintiff does *not* allege anywhere in its Amended Complaint that its premises have been rendered untenantable. To the contrary, as discussed, plaintiff continues to have access to its premises, and continues to serve food. Accordingly, there has been no "suspension" of operations within the meaning of the Policy, no coverage exists, and plaintiff's claims should be dismissed as a matter of law.

**VII.  THIS COURT LACKS PERSONAL JURISDICTION OVER THE CLAIMS OF NON-FORUM PUTATIVE CLASS MEMBERS.**

In addition to the grounds set forth above, certain of plaintiff's claims also fail for lack of personal jurisdiction under Rule 12(b)(2). In its Amended Complaint, plaintiff purports to seek certification of a national class of insureds and a subclass of New Mexico insureds. [*See* Am. Compl. ¶ 170.] Yet, this Court lacks personal jurisdiction over the claims of non-forum putative class members. See *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916 at *4 n. 4 (D. Ariz. Oct. 2, 2017) (citing *Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017)). No class exists or should exist, and the non-

forum class claims should be dismissed for lack of personal jurisdiction.

## VIII. CONCLUSION.

As a matter of law and basic contract interpretation, plaintiff has no claim for coverage under the Policy. Accordingly, this Court should dismiss plaintiff's claims with prejudice and award Defendant its fees and costs pursuant to A.R.S. § 12-341.01.

RESPECTFULLY SUBMITTED this 19th day of June, 2020.

/s/ Brian A. Cabianca
Brian A. Cabianca
Gregory Schneider
SQUIRE PATTON BOGGS (US) LLP
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Tel: (602) 528-4000
Fax: (602) 253-8129

Aneca E. Lasley (*Admitted Pro Hac Vice*)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Tel: (614) 365-2700
Fax: (614) 365-2499

Michael H. Carpenter (*Admitted Pro Hac Vice*)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145

*Counsel for Defendants Nationwide Mutual Insurance Company and Allied Property and Casualty Insurance Company*

## **CERTIFICATION**

Pursuant to this Court's April 28, 2020 Order and LRCiv 12.1(c), Defendants' counsel hereby certifies that prior to filing this motion they conferred with counsel for plaintiffs regarding the issues raised by this motion.  The parties were unable to reach agreement.

*/s/ Brian A. Cabianca*
Brian A. Cabianca
Gregory Schneider
SQUIRE PATTON BOGGS (US) LLP
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Tel: (602) 528-4000
Fax: (602) 253-8129

Aneca E. Lasley (*Admitted Pro Hac Vice*)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio  43215
Tel:  (614) 365-2700
Fax:  (614) 365-2499

Michael H. Carpenter (*Admitted Pro Hac Vice*)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145

*Counsel for Defendants Nationwide Mutual Insurance Company and Allied Property and Casualty Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of June, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Andrew S. Friedman
> Francis J. Balint, Jr.
> Bonnett Fairbourn Friedman & Balint, P.C.
> 2325 E. Camelback Road, Suite 300
> Phoenix, AZ  85016
>
> Deborah R. Gross
> Melissa Mazur
> Kaufman, Coren & Ress, P.C.
> 2001 Market St., Suite 3900
> Philadelphia, PA  19103
>
> Keith M. Fleischman
> Joshua D. Glatter
> Fleischman Bonner & Rocco LLP
> 81 Main Street, Suite 515
> White Plains, NY  10601
>
> *Attorneys for Plaintiff*

                              */s/ Tanya Skeet*