**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Border Chicken AZ LLC, | No. CV-20-00785-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Nationwide Mutual Insurance Company, *et al.*, | |
| Defendants. | |

At issue is the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Allied Property and Casualty Insurance Company (Doc. 18, MTD). The Court has considered Plaintiff's Response (Doc. 26, Resp.), Defendant's Reply (Doc. 28), as well as the parties' Notices of Supplemental Authority (Docs. 37, 40, 42-45, 47-48) and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). Because the insurance policy at issue contains a provision that unambiguously bars coverage for "loss or damage caused directly or indirectly…" by "any virus, bacterium, or other microorganism," the Court will dismiss Plaintiff's Complaint in its entirety.

**I.     BACKGROUND**

Plaintiff Border Chicken AZ LLC owns 15 franchises of Church's Fried Chicken and one franchise of Little Caesars Pizza, 14 in Arizona and one in New Mexico. (Doc. 15, First Am. Compl. ("FAC") ¶ 7.)[1] On or about December 26, 2019, Plaintiff purchased the

---

[1] After Defendant filed its prior Motion to Dismiss (Doc. 11), Plaintiff filed the FAC, the now-operative Complaint (Doc. 15), as well as a Notice of filing the FAC (Doc. 17). As a result, the Court will deny as moot the prior-filed Motion to Dismiss (Doc. 11).

Premier Businessowners Policy ("Policy") from Defendant for coverage from January 1, 2020 to January 1, 2021.[2] (FAC ¶¶ 11-12.) The Policy covers various types of losses, including in pertinent part, losses caused by "Civil Authority." This section states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> Civil Authority coverage for "business income" will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to 30 days after coverage begins. Civil Authority coverage for necessary "extra expense" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end: (1) 30 days after the time of that action; or (2) When your Civil Authority coverage for "business income" ends, whichever is later.

(Doc. 18, Ex. A § A(5)(j).)

Additionally, the Policy excludes coverage for certain events, including in pertinent part, loss due to "Virus or Bacteria" ("Virus Exclusion"). The relevant portion of this section states:

---

[2] Plaintiff's initial Complaint (Doc. 1) listed Nationwide Mutual Insurance Company (Nationwide), the parent company of Allied Property and Casualty Insurance Company (Allied), as a Defendant. Plaintiff removed Nationwide as a Defendant in the FAC.

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
> (i.) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Doc. 18, Ex. A § B(1)(i).)

On March 19, 2020, in response to the rising number of COVID-19 cases in Arizona, Governor Doug Ducey issued Executive Order 2020-09 LIMITING THE OPERATIONS OF CERTAIN BUSINESSES TO SLOW DOWN THE SPREAD OF COVID-19 ("Arizona Order 2020-09"), which mandated that as of the close of business on Friday March 20, 2020, "all restaurants in counties of the State with confirmed cases of COVID-19 shall close access to on-site dining until further notice. Restaurants may continue serving the public through pick up, delivery, and drive-thru operations." (FAC ¶¶ 23, 25.) Subsequently, on March 30, 2020, Governor Ducey issued Executive Order 2020-18 ("Executive Order 2020-18"), requiring businesses and entities remaining open to implement rules and procedures that facilitate physical distancing and spacing of individuals of at least six feet. Plaintiff complied with these Orders, shutting down on-site dining and only serving customers through pick up and drive-thru operations, which caused it to suffer financial losses. (FAC ¶¶ 25, 28.) Plaintiff subsequently sought coverage for its financial losses under the Civil Authority provision, but Defendant refused coverage due to the Virus Exclusion. (FAC ¶¶ 28-29.)

Plaintiff alleges that Defendant is required under the Civil Authority provision to cover Plaintiff's financial losses caused by its compliance with Governor Ducey's Executive Orders, and that Defendant's refusal to do so constitutes a breach of contract. Defendant argues that the Civil Authority provision of the Policy does not cover Plaintiff's losses for a multitude of reasons, including that the Virus Exclusion bars coverage for losses caused by viruses such as COVID-19, and now moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).

Before delving further into each party's arguments, the Court notes that Plaintiff's FAC did not contain a single allegation regarding the Virus Exclusion. Rather, Plaintiff waited until it filed its Response to raise new allegations that focus on an Insurance Service Office ("ISO") document ("ISO Circular") that allegedly supports Plaintiff's legal theories as to why the Virus Exclusion should not apply.

That is not the way this works. Plaintiff must raise all allegations in its pleadings and cannot surprise Defendant with new allegations in its Response. Plaintiff's inclusion of new allegations in the Response is particularly inexcusable because Plaintiff had multiple opportunities to amend the Complaint in order to address the Virus Exclusion. First, Defendant notified Plaintiff, as required by LRCiv 12.1(c), that it planned to move to dismiss the Complaint based on the Virus Exclusion, but Plaintiff chose not to amend the Complaint. (Doc. 11 at 13.) Defendant subsequently filed the first Motion to Dismiss, which expressly argued that the Complaint should be dismissed based on the Virus Exclusion. (Doc. 11 at 7-10.) In response, Plaintiff amended the Complaint, but the FAC still did not include any allegations regarding the Virus Exclusion or the ISO Circular. Plaintiff's repeated failure to address the Virus Exclusion in the pleadings is highly inefficient and a waste of both time and resources.

Taking only the allegations in the FAC as true, the Court holds that Plaintiff has failed to state a claim. Likewise, if the Court was to take the proposed allegations in the Response as true and take judicial notice of the cited ISO Circular, the Court would still hold that Plaintiff failed to state a claim because the Virus Exclusion applies to bar coverage for Plaintiff's losses caused by COVID-19.

## II.   LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and

therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

Because this case was brought in federal district court based on this Court's diversity jurisdiction, Arizona law governs the interpretation of the contract. *See Colony Ins. Co. v. Events Plus, Inc.* 585 F. Supp. 2d 1148, 1151 (D. Ariz. 2008) (applying Arizona law to interpret contract); *AMERCO v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. CV 13–2588–PHX–PGR, 2014 WL 2094198 at *3 (D. Ariz. May 20, 2014) (same). Under Arizona law, the interpretation of a contract is a question of law for the court to decide. *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977).

"Courts construe an insurance contract according to its plain and ordinary meaning." *AMERCO*, 2014 WL 2094198 at *3. "Unambiguous provisions must be given effect as written," and "[w]hen policy language is unambiguous, the court does not create ambiguity to find coverage." *Id.* Furthermore, "[a]n insurer may limit its liability by imposing conditions and restrictions as long as those restrictions are not contrary to public policy." *Cooper v. Am. Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 963 (D. Ariz. 2002).

- 5 -

Defendant advances multiple arguments in support of its MTD. Chief among these arguments is the contention that the Virus Exclusion bars coverage under the Civil Authority provision. Defendant further argues that Governor Ducey's Order does not prohibit consumer access to the restaurant and that Plaintiff has not suspended its operations as required by the Policy. Because the Court finds that the Virus Exclusion plainly and unambiguously bars coverage for losses claimed by Plaintiff under the Civil Authority provision, it does not reach a conclusion on Defendant's other arguments.

The Civil Authority provision expressly states that it will only provide coverage when an action of civil authority is taken in response to a "Covered Cause of Loss." (Doc. 18, Ex. A § (A)(5)(j).) The Policy is also clear that any loss that is listed in Section B, "EXCLUSION," will not be considered a "Covered Cause of Loss," stating, "We will not pay for loss or damage caused directly or indirectly by any of the following." (Doc. 18, Ex. A § (B)(1).) The Virus Exclusion, part of Section B, expressly excludes losses caused "directly or indirectly" by "Virus or Bacteria." (Doc. 18, Ex. A § (B)(1)(i).) Plaintiff does not dispute that COVID-19 is a virus. Taken together, these provisions unambiguously preclude coverage for the Plaintiff's losses.

### A.   The Virus Exclusion Applies to Civil Authority Coverage

Plaintiff first argues that the Virus Exclusion should not apply because Governor Ducey's Executive Order, not COVID-19, caused its business income loss. (Resp. at 7-9.) This argument misreads the plain language of the Policy and ignores that Governor Ducey issued the Executive Orders in order to combat the spread of COVID-19. The Policy expressly states that the Virus Exclusion bars coverage for "loss or damage caused *directly or indirectly*" by a virus and "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Doc. 18, Ex. A § B(1)(i) (emphasis added).) At the least, COVID-19 was an indirect cause of Plaintiff's loss. In fact, the FAC states that Plaintiff suffered losses due to the civil actions taken by governmental authorities in order to "address the current coronavirus pandemic" (FAC ¶ 1), and Governor Ducey's

Executive Order 2020-09 was titled "LIMITING THE OPERATIONS OF CERTAIN BUSINESSES TO SLOW THE SPREAD OF COVID-19."

Further, Arizona courts have enforced similar policy exclusions that bar coverage for a concurrent-cause. *See, e.g., Cooper*, 184 F. Supp. 2d at 962 ("Arizona has not adopted the 'efficient proximate cause' rule and as such, an insurer is permitted to limit its liability with a concurrent causation lead-in clause"); *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 826 (Ariz. Ct. App. 1990) (rejecting "efficient proximate cause" doctrine and enforcing policy exclusion denying coverage for a concurrent-cause).

In further support of the argument that the Virus Exclusion does not apply, Plaintiff points out that the "payout for civil authority coverage comes from business income loss or extra expense, not the property damage caused by the virus." (Resp. at 8.) It is unclear to the Court why this distinction matters; regardless of what type of losses the Civil Authority provision covers, it is unambiguous that the Policy does not cover any losses directly or indirectly caused by the virus. Federal district courts analyzing similar virus exclusion provisions have come to the same conclusion. *See e.g. Diesel Barbershop, LLC v. State Farm Lloyds*, Case No. 5:20-CV-461-DAE (W.D. Texas) (August 13, 2020 Order; Ezra, J.) (holding virus exclusion unambiguously bars the plaintiff's claims under civil authority provision of policy); *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Ins. Cos.*, 2020 WL 6440037 at *5-6 (C.D. Cal. Oct. 27, 2020) (same); *Mark's Engine Co. No. 28 Rest., LLC .v Travelers Indem. Co. of Conn.*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (same). Notably, the exclusion clause in *Mark's Engine Co. No. 28 Restaurant, LLC* did not expressly state that coverage was barred for losses caused "indirectly" by a virus, but the court still held that the virus exclusion applied. 2020 WL 5938689 at *2.

### B.     Plaintiff Did Not Have a Reasonable Expectation of Coverage

The remainder of Plaintiff's arguments rely on allegations first asserted in its Response. Plaintiff argues that the Virus Exclusion should not be enforced because Plaintiff had the reasonable expectation that the Policy would provide coverage for losses suffered

if its business was forced to shut down. (Resp. at 9.) Plaintiff cites *Darner Motor Sales, Inc. v. Universal Underwriters Insurance. Co.*, 682 P.2d 388, 406 (Ariz. 1984) for the proposition that boilerplate language that conflicts with the intent of the parties will not be enforced. This argument fails on multiple levels. *Darner* is clear that a plaintiff must provide a reason as to why its expectation was reasonable, such as prior negotiations. *Id.* (reasonable expectations claim will only be recognized where plaintiff can demonstrate that the expectations to be realized are those that "have been induced by the making of a promise," as evidenced by prior negotiations or other factors). Plaintiff does not allege any prior negotiations or other activity that would lead to the reasonable expectation of coverage. Instead, it points to the ISO Circular, allegedly written to justify including a virus exclusion clause in future policies, to argue that the Virus Exclusion was only meant to address temporary contaminations, such as E. coli or salmonella, but not a pandemic on the scale of COVID-19. (Resp. at 10, citing ISO Circular LI-CF-2006-175, New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria, ISO (July 6, 2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISOCircular-LI-CF-2006-175-Virus.pdf.) This allegation is insufficient; the ISO is a non-party and Plaintiff does not make any allegations that it relied on or much less read the ISO Circular prior to agreeing to the Policy.

Even if Plaintiff had alleged that it relied on the ISO Circular, it would not be sufficient to show a reasonable expectation of coverage. The ISO Circular does not distinguish between coverage for temporary illnesses versus long term illnesses and pandemics. If anything, it illustrates the ISO's intent that a virus exclusion would apply to a disease such as COVID-19 by expressly stating that a virus exclusion is necessary so that the insurance company would not have to cover losses caused by, amongst other things, "rotavirus, SARS, influenza (such as avian flu)," (ISO Circular at 1.) which are "highly infectious diseases" that are similar to COVID-19. *Boxed Foods Co., LLC v. Cal. Cap. Ins. Co.*, No. 20-cv-04571 at 10 (N.D. Cal.) (Oct. 26, 2020 Order) (explaining that the ISO's intent that the virus exclusion bar coverage for losses caused by SARS was evidence that

1    exclusion would apply to COVID-19). Further, in the "Current Concerns" section of the
2    ISO Circular, it expressly states that a virus exclusion is necessary because "the specter of
3    *pandemic*… raises the concern that insurers employing such policies may face claims in
4    which there are efforts to expand coverage and to create sources of recovery for such losses,
5    contrary to policy intent." (ISO Circular at 2 (emphasis added).) If Plaintiff had read the
6    ISO Circular prior to entering the agreement, it would have had the reasonable expectation
7    that losses due to a pandemic would not be covered.

Plaintiff additionally argues that Defendant's mere offering of the Policy gave Plaintiff the reasonable expectation that it would provide coverage if Plaintiff's business was forced to shut down. This expectation by itself falls far short of the reasonable expectation standard set in *Darner*, which expressly warns against allowing plaintiffs to claim that they had a reasonable expectation of coverage solely based on their purchase of the policy. *Id.* at 395 ("most insureds develop a 'reasonable expectation' that every loss will be covered by their policy;" therefore, "the reasonable expectation concept must be limited by something more than the fervent hope usually engendered by loss").

Lastly, the Policy expressly states that the Virus Exclusion "does not apply to loss or damage caused by or resulting from "fungi, wet rot or dry rot," illustrating that if the parties wanted the Virus Exclusion to not cover pandemics, they would have included such a provision in the contract. *Depositors Ins. Co. v. Ubrina*, 411 F. Supp. 3d. 454, 460 (D. Ariz. 2019) (stating limitations on coverage expressly written in contract served to exclude other limitations not listed).

### C. The Policy is Unambiguous

In the alternative, Plaintiff argues that that the policy language is ambiguous and extrinsic evidence is necessary to clarify the ambiguity. However, Plaintiff fails to identify any ambiguity. Instead, Plaintiff contends that because the Policy uses standardized form language created by the ISO, the Court must allow discovery into how the Virus Exclusion's scope and meaning were represented to the insurance regulators. This argument misses the mark; a party cannot simply create ambiguity. *See Millar*, 804 P.2d

at 825 ("a policy term is not ambiguous . . . merely because one party assigns a different meaning to it in accordance with his or her own interest"). Furthermore, "[w]here the policy language is clear, a court may not take the easy way out by inventing ambiguity, then resolving it to find coverage where none exists under the policy." *Id.* at 824. Here, the Court finds that the language in the Virus Exclusion clearly and unambiguously bars coverage for losses directly and indirectly caused by a virus.

### D. Regulatory Estoppel Does Not Apply

Likewise, Plaintiff's regulatory estoppel argument is unconvincing. Regulatory estoppel is a "doctrine foreign courts have used to preclude insurers from taking a position contrary to one allegedly presented to a regulatory agency." *Nammo Talley Inc. v. Allstate Ins. Co.*, 99 F. Supp. 3d 999, 1005 (D. Ariz. 2015). Plaintiff argues in a footnote that the "principles of regulatory estoppel" are implicated by the way Defendant received approval from regulators to include the Virus Exclusion. (Resp. at 2 n. 2.) This argument fails for multiple reasons. First, Arizona courts have not recognized the theory of regulatory estoppel. *Id.* (holding regulatory estoppel did not apply and noting that "Arizona has never adopted the doctrine of regulatory estoppel"). Furthermore, Plaintiff did not plead any facts in the FAC regarding regulatory estoppel. Even if the Court were to rely on allegations in Plaintiff's Response, those allegations still would be insufficient to properly state a claim for breach of contract based upon regulatory estoppel. The Response merely states Plaintiff's belief that the non-party ISO assisted Defendant in obtaining permission from the state insurance regulators to include a Virus Exclusion clause under the wrongful premise that it did not change coverage. Plaintiff's belief, devoid of specific allegations of any action or representation made by the Defendant, is insufficient. *See Iqbal*, 556 U.S. at 678 (pleading that contains "naked assertions devoid of further factual enhancement" will not survive motion to dismiss). Regardless, the ISO Circular is clear that the Virus Exclusion is meant to exclude losses caused by pandemics. *See supra* at II.B. Assuming regulators did rely on the ISO document, they would have been aware of its effect on future coverage.

### E.      Supplemental Authorities

Both parties filed multiple notices of supplemental authorities containing cases where other courts have either denied or granted the defendant insurance companies' motions to dismiss plaintiffs' breach of contract complaints for failure to cover a policyholder's losses caused by COVID-19. The Court has reviewed these authorities and has cited to authorities submitted by Defendant throughout the Order. The Court does not find Plaintiff's submissions to be persuasive because they either do not analyze a virus exclusion clause or are distinguishable for other reasons.

In *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co.*, No: 6:20-cv-1174-Orl-22EJK, slip op. at 7 (M.D. Fla. Sept. 24, 2020), the court held that because the virus exclusion clause also excluded losses due to "fungi, wet rot, dry rot…," it did not "logically align" and was thus ambiguous as to whether it would exclude losses for an illness such as COVID-19. The court also noted that the virus exclusion applied to portions of the insurance policy that it had not yet received and thus could not review. Here, neither issue is present. The Virus Exclusion unambiguously excludes coverage for losses caused by viruses such as COVID-19 and expressly states that it does not apply to "fungi, wet rot or dry rot." *See supra* at II.B. Furthermore, the Court has reviewed the entire policy.

In *Ridley Park Fitness, LLC v. Philadelphia Indemnity Insurance Co.*, No. 01093, slip op. (Pa. Ct. Com. Pl. Aug. 31, 2020), the only other case submitted by Plaintiff where the policy contained a virus exclusion clause, the court did not provide its reasoning for denying the motion to dismiss.

The insurance policies in the other cases that Plaintiff cites do not contain virus exclusion clauses or are clearly distinguishable based on their procedural posture.[3] Notably, the court held in *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) that the policy's lack of a virus exclusion clause distinguished it from policies that did have such a clause. *Id.* at *9 n.2 (denying defendant's motion to

---

[3] While the Court does not discuss all of the cases cited by Plaintiff, it has reviewed all of them and finds them distinguishable and unpersuasive.

dismiss and stating decisions cited by defendant were inapposite because policies in those cases contained a virus exclusion clause). Finally, in *Adorn Barber & Beauty, LLC v. The Hartford*, No. 3:20-cv-00418, slip op. (E.D. Va. Sept. 15, 2020), the court merely held that the plaintiff could amend its complaint and granted the plaintiff's motion to stay.

For the foregoing reasons, the Court holds that Plaintiff has failed to state a claim for breach of contract. When a defective complaint can be cured, the plaintiff is entitled to amend the complaint before the action is dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Here, it does not appear that amendment can cure the defects in the FAC, even with the suggestions Plaintiff makes in its Response. As a result, the Court denies Plaintiff leave to amend the FAC.

**F.    Attorney's Fees**

Pursuant to A.R.S. § 12-341.01, Defendant requests its attorneys' fees and costs in defending this action because Plaintiffs' claims arise out of a contract between the parties. The Court agrees that, under A.R.S. §§ 12-341.01 and 12-349, Defendant is entitled to seek reasonable attorneys' fees and costs and may submit an application for fees and costs that complies with the applicable rules.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 18).

**IT IS FURTHER ORDERED** denying as moot Defendants' prior Motion to Dismiss (Doc. 11).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment dismissing this case and to close this matter.

**IT IS FURTHER ORDERED** that Defendant shall file any application for fees within 14 days of the date of this order.

Dated this 20th day of November, 2020.

Honorable John J. Tuchi
United States District Judge